By the Court. Duer, J.
The only question that the agreement of the parties requires us to decide, is, whether Howard, as landlord, was bound to make the repairs in question ? If he was not, the defendants have expressly promised to repay to him the moneys, which it is admitted that he expended in making the repairs, and the validity of their promise, as founded on a sufficient consideration, is not questioned.
It may be that the rules of the common law which govern the relation of landlord and tenant, are unsuited to the present condition of society, and, judged by modern notions, are unequal and oppressive; but a court of justice has no power to abolish them by the substitution of others that it may deem to be more reasonable and just, and it is not our intention in this, or in any case, to encroach upon the province of the legislature. When the law is doubtful, reasons of expediency and of equity have great weight, but we have no right to listen to them when the law is clear; since we have no more the power to alter rules plainly settled by prior adjudications, than to repeal the express provisions of a statute. We must declare the law as we find it to be established.
There is probably no rule of the common law more completely settled by a long series of adjudications, than that to create an obligation on thé part of a landlord to repair, in whole or in part, the premises demised, a positive stipulation, an express covenant or promise, is necessary to be proved. It is not a duty which the law considers as flowing from the rela *474 tion of the parties, or which can be implied from the nature of their contract. Even when a house or other building is let for a special purpose, and its use or occupation for any other is in terms prohibited, there is no implied contract or warranty on the part of the landlord, that the tenement shall be, or continue) fit for the purpose for which alone it is demised. The provision restricts the tenant, but imposes no obligation upon the landlord.
Hor is this all. Hot only is the landlord not bound to repair, in any case, unless by force of an express agreement, but the tenant, even when the tenement demised ceases to be habitable, or is wholly destroyed, is not discharged, in whole or in part, from the payment of the rent subsequently accruing. Unless by a provision in the lease, the rent, upon the happening of such a contingency, is suspended or reduced, the promise of the tenant to pay the whole stipulated rent during the whole term, is construed as unqualified and absolute, notwithstanding the apparent failure of the consideration upon which it was founded.
If these established rules are applicable to the present case, the right of the plaintiff to recover cannot be questioned, and that they are applicable we see no reason to doubt.'
It is not pretended that the lease to the defendants contains an express covenant on the part of the plaintiff to repair; nor, in our opinion, does it contain a single provision that can be legally or reasonably interpreted as creating, or intended to create, such' an obligation.
It is true, that the lease contains a covenant in the usual words, for the quiet possession and enjoyment by the defendants of the premises demised, nor can it be denied that the words may be so interpreted as to favor the argument for the defendants. But the just interpretation of these words we have no right to consider as an open question. A covenant for quiet enjoyment, whether express or implied, it has long been settled, means only that the tenant shall not be evicted by a paramount title. It relates only to the title, and not to the actual possession or undisturbed enjoyment, where there is no eviction, of; the premises demised (Shep. Touchstone, 165,169, 202). We can perceive no grounds for the supposition, that in this case *475 the usual words of the covenant were meant to be understood by the parties in any other than their usual and established sense. If the parties had any other intention, it is not an intention that we can deduce from their language, and, therefore, not an intention to, which, as judges, we can give effect.
The contract of the parties undoubtedly contains many provisions that do not properly belong to a lease, and may, therefore, not improperly be termed a mixéd contract; but we do not understand how these additional provisions (those relating to the sale of the furniture, the restoration of the fixtures, &c.) can affect the construction of those which relate solely to the letting of the premises, so as to vary the relative obligations of the parties as landlord and tenants. It is, indeed, apparent that the parties expected that the premises demised would be fit for occupation as a hotel during the continuance of the lease; but in any case where a house is let for a special purpose, and is believed to be fit for that purpose at the commencement of the lease, there is a similar expectation, and if this expectation is to have, in any case, the force of a positive covenant, the same effect must be given to it in all. The rule of law would then be, that whenever a building is let for a special purpose, there is an implied covenant or agreement on the part of the landlord that it shall continue fit for that purpose during the whole term for which it is demised; but the rule, it has already-been stated, is directly opposite—and that this is so, is sufficiently proved by the authorities to which we were referred by the counsel for the plaintiff, several of which are full to the point, and are uncontradicted.
The only authority on which the learned counsel for the defendants seemed much to rely, is the case of Smith v. Marrable (11 Mees. & Wels. 5); but we think that the authority of the decision in that case may well be doubted, and that, if its authority be admitted, it has no application to the case before us. If the decision proceeded on the ground that there is an implied condition in every letting of a house, that it shall be fit for habitation, we do not hesitate to say that it is not law; and if it proceeded on the ground that the letting was of a furnished house, and included the furniture as well as the house, it may be that it creates a valid exception from the general *476 rule, but this is an. exception not embracing the case before us, since here the furniture was not let with the hotel, but was sold absolutely-to the defendants.
It is said that the decision in Smith v. Marrable was sustained by the same court in Sutton v. Temple (12 M. & W. 52), and in Hart v. Windsor (Id. 68), but, as we understand these sub-' sequent cases, so far from sustaining, they absolutely overrule the prior decision.
In Hart v. Windsor, Parke, B., who delivered the opinion of the court, distinctly admits that the opinion which he gave in Smith v. Marrable was erroneous, and that the case “ could not be supported on the grounds on which he rested his judgment” (12 M. & W. 89) ; and in another part of his opinion he lays down the true rule in the following terms: “ There are many authorities which clearly show that- there is no implied contract that the property shall continue fit for the purpose for which it is demised, as the tenant can neither maintain an action, nor is he exonerated from the payment of rent, if the house demised is blown down or destroyed by fire (Marsh v. Cooper, 2 Stra. 763; Balfour v. Weston, 1 T. R. 310; and Ainsley v. Ritter, there cited), "or gained upon by the sea (Taverner’s case, Dyer, 56 [a]), or the occupation rendered impracticable by the King’s enemies (Paradine v. Jane, Alleyn, 26). In all these cases the estate of the lessee continues, and that is all the lessor implicitly warrants” (12 M. & W., pp. 85, 86).
We observe, in conclusion, that should we even admit.that Smith v. Marrable is a full authority for the position for which it has not unfrequently been cited, namely, that when a building let as a dwelling-house ceases to be fit for habitation, the tenant may abandon the possession, and thus discharge himself from the payment of rent, it would by no means follow that the landlord, in such a case, is bound to place the house in a habitable condition, and is liable to an action in the event of his neglect or. refusal; and it may be confidently affirmed, that not a single case is to be found in which it has been held that such a duty can attach upon the landlord, otherwise than by virtue of an express agreement.
. The plaintiff is, therefore, entitled to judgment for the whole *477 sum, with interest, which it is admitted that he expended; and. placing our decision upon these grounds, it is unnecessary, and would be improper, to express any opinion upon the legal construction and effect of the covenant, by which the defendants .bound themselves “ to keep the premises in reasonable order and condition.” It may be that the defendants were not hound to make the repairs in question; it is certain that the plaintiff was not.'
Judgment for plaintiff, with costs.