EGAN & GUNN *vs.* E. M. BREWER, *et al.*

EXCEPTIONS.

HEARING, JULY 5, 1893.                 DECISION, JULY 28, 1893.

JUDD, C.J., BICKERTON AND FREAR, JJ.

(1) In the absence of an express warranty to that effect, none can be implied from the relation of landlord and tenant that the building the subject of the demise is safe, well built and reasonably fit for the purpose for which it was demised.

(2) The failure to give opposing counsel opportunity to inspect a bill of exceptions before it is allowed, as provided by Rule 15 (C) of the Circuit Court, would not warrant the dismissal of the bill. The rule being directory the proper course for the Circuit Judge would be to withdraw the bill and allow the opposing counsel the opportunity provided for by the rule.

OPINION OF THE COURT, BY JUDD, C.J.

The amended declaration states a case of assumpsit upon a written agreement whereby the defendants undertook to build for the use and occupancy of the plaintiffs a building to be used as a retail store, and to construct it in a manner fit and suitable for the plaintiffs' occupancy as such retail store; that defendants tendered the building to plaintiffs and represented it to be built and finished in a manner fit and suitable for plaintiffs' occupancy as such store; the plaintiffs depending upon the truth of such representations accepted and occupied the building and have continued to occupy it under the written agreement and of a lease made in pursuance thereof; that defendants failed and neglected to perform their agreement with plaintiffs in that they failed to make the building, roof and the skylight thereof fit and suitable to turn and keep out the rain and other water that fell and flowed upon said roof and skylight, and in consequence of

such neglect and faulty construction the rain water was admitted through the skylight and damaged plaintiffs' goods.

This declaration was demurred to on the ground that it set forth no cause of action. Judge Cooper of the First Circuit Court sustained the demurrer, to which exceptions are now brought to this Court.

In the former case between these parties we reversed the judgment for the plaintiffs and ordered a new trial on the ground that the declaration was for trespass in case by a tenant against a landlord, for gratuitous repairs of a tenement unskillfully and negligently done, and the proofs and findings of fact supported an action upon a covenant that the building was fit and suitable for the intended use of it by plaintiffs, and there was a variance between the declaration and proofs. In the course of the decision occurs this remark: "The evidence fully sustains the finding of fact—(that the leak was owing to the original faulty method of constructing the skylight), and *if* the declaration had been for damages for breach of the agreement to build, or upon a covenant express or implied that the building should be finished, fit and suitable for plaintiffs' intended use, this evidence would apparently have justified a judgment against defendants." This was a comment on the character and effect of the evidence, and though it was delivered without much consideration, we did intend not to express any opinion that the agreement to build on the lease contained a covenant that the building should be fit and suitable for the plaintiffs' use, and we now find that neither the agreement nor the lease contain any express covenant that the building was to be fit and suitable for plaintiffs' use and occupancy. Is there any implied covenant of this character? This question is now raised by the demurrer. Exhaustive discussion of the landlord's liability to the lessee for injuries can be found in 1 Taylor's Landlord & Tenant, Secs. 175A, 327, 328 and 382. Section 175A: "As the lessor does not warrant the condition of the premises, and the tenant, because he can inspect them, assumes the risk of their state; for any injury suffered

by him during his occupancy by their defective condition, or even faulty construction, he cannot make the lessor answerable, unless there was misrepresentation, active concealment, or perhaps a total inability on the tenant's part to discover the defect before entry." In *Brewster vs. De Fremery*, 33 Cal., 341, the court denied the liability of the lessor to his tenant's administratrix for damages for his death occasioned by the falling of the walls of the demised tenement, the lease containing no covenant to uphold or keep the premises in repair, and the walls falling by reason of their foundations being undermined by the owners of the adjacent lot, of which the lessor had timely notice, and adopted no preventive measures. The court cite approvingly *Howard vs. Doolittle*, 3 Duer, 464 (N. Y.), where it is laid down that a landlord is in no case bound to repair, unless by force of express covenant or contract, and that, even where a building is let for a special purpose, and its use and occupation for any other is in terms prohibited, there is no implied contract or warranty on the part of the landlord that the building shall be, or continue to be, fit for the purpose for which it is demised. In *Jaffe vs. Harteau*, 56 N. Y. 401, the Court say, "There is no reason for holding the lessor, in the absence of any agreement or fraud, liable to the tenant for the present or future condition of the premises, that would not be equally applicable to a similar liability sought to be imposed by a grantee in fee upon his grantor."

In *Looney vs. McLean*, 129 Mass., 33, it was held that in the case of landlord and tenant, there is no implied warranty on the part of the former that the demised premises are tenantable or in good condition, the tenant being supposed to examine and judge for himself—but this rule was held not to apply to staircases, passage ways, doorsteps, etc., that were meant for general use by all the tenants, and no one of the tenants responsible for the repairs of such places.

*Scott vs. Simons*, 54 N. H., 426, is an instructive case. Here the court held that there is no implied warranty on the part of a landlord of leased premises that they shall be fit

for use, and that there is no implied contract on the part of a landlord of leased premises, that he will keep them in repair. In discussing these principles the court say—the plaintiffs contend that "the defendants must be held liable in this action by virtue of the relation of landlord and tenant existing between the parties." But what obligation did that relation impose on the defendants? The plaintiffs might have declined to occupy the premises unless the defendants would expressly covenant that they were suitable for use; but they saw fit to enter and occupy without any express covenants. There are, it is true, respectable authorities which hold that where premises are let for the purposes of occupation, there is an implied condition that they shall be fit for use; citing 11 M. & W., 5; 16 E. C. L., 271; 1 Moo. & R., 112; 4 C. & P., 65; 9 C. & P., 378; 4 N. Y., 217. But the weight of authority is decidedly the other way.

Smith, L. & T., 262; Woodfalls, L. & T., 493; Taylor, L. & T. 381; 1 Pars. Cont., 589; 1 Wash., R. P. (3d ed.), 473; 12 M. & W., 52; 34 Beav., 250; L. R., 6 Exch., 217; 7 Hill, 83; 9 Cush., 89 and 242; 106 Mass., 202; 45 N. H., 36. It is very clear upon the authorities that the defendants, in the absence of proof of actual fault on their part, are not liable in this action by virtue of any implied warranty that the plaintiffs' goods should not be injured by the bursting of a drain pipe. "The defendants might be liable to their tenants, or to strangers, for subsequent injuries, if, after notice of the breach they were negligent in not repairing it, but we think not to anyone who, being aware of the defect, unnecessarily exposed his goods to injury by it." *Libbey vs. Tolford,* 48 Me., 317, holds that "in a lease of a store there is no implied warranty that the building is safe, well built, or fit for any particular use." In *Stevens vs. Peirce,* 151 Mass., 209 (1890), the Court say: "It is well settled that there is no implied covenant in a lease of this kind (a dwelling house) that the premises were fit for habitation. The doctrine *caveat emptor* applies, and the rule is the same in reference to a lease of a dwelling house as to a conveyance

of real estate of any other kind. The plaintiff, therefore, has no cause of action growing out of the contract by which he held the premises. Nor can he, for the purpose of claiming damages for a breach of the contract, prove that the defendant represented to him, when he leased the house, that it was in good sanitary condition; such evidence is incompetent, as tending to vary and enlarge the written contract (citing *Dutton vs. Gerrish*, 9 Cush., 89.) If a wrong was done the plaintiff, as he alleges, his only remedy was in tort, for fraud and deceit in inducing him to take the lease, or for negligence in failing to inform him, if by reason of a concealed defect which could not be readily discovered, and which was known to the defendant, and unknown to him, the house was dangerous to those who might occupy it."

1 Taylor, L. & T., Sec. 382, sums up as follows: There is no implied warranty on the letting of a house that it is safe, well built or reasonably fit for habitation; citing *Cleves vs. Willoughby*, 7 Hill, 83, where it is said that "the doctrine of implied warranties relates to the title and not to the quality of the premises."

Having found that there was no express warranty either in the agreement to lease or in the lease between the parties that the store was to be safe, well built and fit for use as such, and, holding that no such warranty is implied from the relation of landlord and tenant between the parties, we do not see how the plaintiffs can in this form of action recover damages to their goods occasioned by rain water coming through a defectively constructed skylight. We therefore overrule the exceptions. We have not considered it necessary to discuss at length the point made by defendants that the exceptions should be dismissed, because not submitted to opposing counsel before being allowed to examine the bill, as required by Rule 15 (C) of the Circuit Court. We regard this rule as directory and, generally, the Court would refuse to sign the bill until opposing counsel had approved of it. If the Court, as was probably the case here, signed the bill inadvertently, the proper course would be to withdraw the

bill and allow opposing counsel the opportunity to inspect the bill provided by the rule.

*A. P. Peterson*, for plaintiffs.

*A. S. Hartwell*, for defendants.