(6 Misc. Rep. 153.)

### MACKENZIE et al. v. HATTON et al.

(Common Pleas of New York City and County, Special Term. November, 1893.)

1. ACTION—JOINDER—CAUSES ARISING OUT OF SAME TRANSACTION.
   An action against plaintiff's lessee and the owner of a lot adjoining the leased premises for injuries caused by excavations made by the adjoining owner, and by the refusal of the lessee to allow the adjoining owner to come on the demised lot for the purpose of securing it against the excavation, states causes of action arising from the same transaction, (Code Civil Proc. § 484, subd. 9,) which are properly joined, though one may be ex contractu and the other ex delicto.

2. LANDLORD AND TENANT—EXCAVATIONS ON ADJOINING LAND.
   Laws 1882, c. 410, § 474, as amended by Laws 1885, c. 456, provides that whenever an excavation is made on land near the boundary of adjoining land, the person causing such excavation to be made, if afforded the necessary license to enter on the adjoining lands, shall render the same safe from injury by reason of the excavation. *Held,* that a lessee of land who refuses such license is liable to his lessor for damages caused by the excavation.

Action by Jane Mackenzie and Alice J. Jones against Loftus D. Hatton and others. Defendant Hatton demurs to the complaint. Overruled.

D. J. Newland and Johnston & Johnston, (Edward W. S. Johnston, of counsel,) for plaintiffs.

Foley & Powell, (J. A. Foley, of counsel,) for defendant Hatton.

BOOKSTAVER, J.  This action is brought by the plaintiffs, as executrices, etc., of the last will of Alexander Mackenzie, deceased, who, in his lifetime, was the owner of premises No. 35 West Fourth street, in the city of New York, against his tenant, Hatton, who was, at the times mentioned in the complaint, and still is, in possession of the premises, under a lease for a term of three years, running from May 1, 1892, and against his codefendants Simon Goldenberg, owner of the adjacent lot north of the plaintiff's premises, and Michael and James J. Larkin, contractors with Goldenberg for the purpose of excavating the basement for a building on the latter's property.  After setting forth the above facts, the complaint alleges that the foundations of testator's buildings extended to a depth of more than 10 feet on the north side of his lot, and that the building was otherwise constructed in compliance with the laws of the city, county, and state of New York; and that the defendants Goldenberg and the Larkins excavated to a depth of 24 feet without leaving safe support for plaintiffs' land and buildings, and in violation of section 474, c. 410, Laws 1882, although license to enter upon the building and premises of plaintiffs was duly given by them; and that they wrongfully, negligently, and unlawfully entered upon the buildings or premises of the plaintiffs, and drove certain needles into the walls of said plaintiffs' building, without permission, knowledge, or consent of said plaintiffs.  It is further alleged that as tenant it was Hatton's duty to give to Goldenberg and the Larkins license to enter upon the leased premises for the purpose of shoring up and protecting the same, but that he "wrongfully, negligently, and unlawfully refused such permission or license as aforesaid, * * * and otherwise interfered with, hindered, and obstructed" such defendants, "to a certain extent preventing them from properly shoring up the said wall, and thereby contributed to the injuries sustained."  The complaint in conclusion charges that by reason of the aforesaid "negligent, wrongful, and unlawful acts of the defendants above named" the walls of plaintiffs' building settled, cracked, and were thrown out of plumb, and were in danger of falling; and that, though partial repairs have been made, the permanent damages amount to $6,000, for which judgment is demanded.

Defendant Hatton demurs to the complaint on the grounds: First, that the causes of action against him and his codefendants are misjoined, in that one is founded on contract and the other is in tort; and, second, that no cause of action is stated against him.

I think it is sufficient to say, in answer to the first ground, that the alleged causes of action arise from the same transaction or transactions, with the same subject of action, and consequently may, under subdivision 9 of section 484 of the Code of Civil Procedure, be joined, even if one were ex contractu and the other ex delicto.  Badger v. Benedict, 1 Hilt. 414, 419; Grimshaw v. Woolfall, (Com. Pl. N. Y.) 15 N. Y. Supp. 857.

The second ground is much more serious.  An analysis of the allegations of the complaint material to the question presented (which is as above stated) shows that there are two distinct counts

against Hatton,—one, his failure and refusal to license the codefendants to enter upon the leased premises, and the other, his active interference with and hindrance to and obstruction of their efforts to shore up and protect the same. The complaint is silent as to the terms of the lease, and we cannot know, therefore, whether or not any covenants for repairs are contained in it. It must therefore be assumed, for the purposes of this demurrer, that the parties sustained to each other the ordinary common-law relations which exist between landlord and tenant. At common law, without express covenant, a landlord was not bound to repair, (White v. Mealio, 37 N. Y. Super. Ct. 72; Witty v. Matthews, 52 N. Y. 512; Clancy v. Byrne, 56 N. Y. 133;) nor was he bound to shore up his premises, (Howard v. Doolittle, 3 Duer, 464,) while it has been held that it was the duty of a tenant, under a contract in his lease to make necessary repairs, to shore up, (Ramsay v. Willkie, [Com. Pl. N. Y.] 13 N. Y. Supp. 554.) It has also been held that a landlord is not liable to his tenant for a refusal to give a license. Sherwood v. Seaman, 2 Bosw. 127. But it is not so clear that, if the tenant fail to give such license, he is not responsible to his landlord. Such responsibility, however, I do not think can arise under the common law, for the necessity for it arises only under a statute, and the duty must therefore arise either from the provisions of the lease, which we do not have before us, or the statute providing for shoring up. The only statute relied upon as imposing this duty is section 474, c. 410, Laws 1882, and amendment thereof, chapter 456, Laws 1885, which reads as follows:

"Whenever excavations for buildings or other purposes, on any lot or piece of land in the city and county of New York, shall be intended to be carried to a depth of more than ten feet below the curb at a place where there shall be any party or other wall wholly or partly on adjoining land, and standing upon or near the boundary lines of such lot, the person causing such excavation to be made, if afforded the necessary license to enter on the adjoining lands, and not otherwise, shall at all times, from the commencement until the completion of such excavations, at his own expense preserve such wall from injury, and so support the same, by a proper foundation, that it shall remain as stable as before the excavations were commenced."

Then follows a general provision which does not seem to affect the rights of individuals as fixed by the part just quoted, but to be merely of a police nature for the protection of the public, to the effect that, if the person whose duty it is under the act to preserve the wall or structure from injury neglects or fails so to do, after having had a notice of 24 hours from the superintendent of buildings to do so, the latter may cause the necessary work of preservation to be done at the expense of the owners of the wall or building so preserved. The effect of this statute is to throw upon the person causing the excavations to be made the duty of supporting adjacent walls only in case the necessary license to enter upon the neighboring premises is afforded them. That this license was not given by the tenant, Hatton, is the grievance complained of in the first count of the complaint. That both tenant and landlord must unite in giving permission to make such a license complete is distinctly intimated in Sherwood v. Seaman, supra. And in John-

son v. Oppenheim, 55 N. Y. 280–286, our court of last resort has said that the tenant's permission is essential to the adjacent proprietor's lawful entry for the preserving of the demised premises. It may be that, on full consideration, it can be established that, under this statute, if the tenant does not give the consent necessary, it may be regarded as analogous to commissive waste, which the tenant is never allowed to suffer to the injury of his landlord, and that he may be held liable on that ground. But I do not consider it necessary at this time to discuss that question, because the complaint shows that in the present case the refusal in no wise injured the plaintiff as to the adjacent owner and his contractors, because they disregarded, according to the allegations of the complaint, the tenant's objections, and entered upon the premises, and proceeded to shore them up, either in some way having obtained such possession or assumed to have the necessary license; consequently their liability to the plaintiff is consummate.

As to the second charge against the demurrant,—that he interfered with the effort made by the other defendants to protect the demised premises, so far as his relations to such others are concerned, it may be conceded that the tenant in possession had a perfect right to interfere with and thwart any measures they might take about the building, since, as to him, they were trespassers. But if, in the exercise of this right as against the trespassers, he violated some obligation to his landlord, he is liable to him, and whether or not he did is a question to be determined on their common-law relations, and independently of the statute, which was not, in my opinion, intended to absolve the tenant from his obligation to the landlord to refrain from acts injurious to the demised premises. The complaint, as I interpret it, charges him with such acts, although with some vagueness and uncertainty. But these defects are not grounds for demurrer, and the demurrer must therefore be overruled and judgment ordered for the plaintiff, with costs, but with leave to the defendant to answer within 20 days after the entry and service of an interlocutory judgment upon him, and the payment of costs.