Perry v. Marsh.

## PERRY vs. MARSH.

1. In case, to recover damages for the loss of a slave who was killed while working on defendant's house, if the declaration avers fraudulent concealment by defendant of the dangerous condition of the house, and also fraudulent representations that it was safe, it is not demurrable for duplicity, but the latter averment may be stricken out as surplusage.

2. In ordinary cases, where a workman is employed to do a dangerous job, or to work in a service of peril, if the danger belongs to the work itself, or to the service in which he engages, he will be held to all the risks which belong to either; but where there is no danger in the work or service in itself, and the peril grows out of extrinsic causes or circumstances, which cannot be discovered by the use of ordinary precaution and prudence, the employer is liable, precisely as a third person, if the loss or injury is caused by his neglect or want of care.

3. If one employs a workman in a service which is apparently safe, but which becomes hazardous from causes disconnected from the service, which are not discoverable by the exercise of ordinary prudence, he is bound, by the strongest principles of morality and good faith, to disclose the danger, if it is known to him; and if he fails to make this disclosure, and the workman, while engaged in the service, thereby sustains an injury, the employer is responsible in damages.

4. If the concealment of the danger by the employer amounts to a breach of duty sufficient to support an action on the case for damages, an additional averment of fraudulent intent may be stricken out as surplusage.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

THE declaration, which was in case, alleges that the slave of the plaintiff below, Marsh, was bound for a term of years to one Sadler, a bricklayer, to learn the trade; that the defendant hired one Coxe, who was in the employ of Sadler, and was his agent, to do certain work near the furnaces and boilers of a building owned by defendant, and used as a cotton press, knowing that the building was unsafe to work in, and that while engaged with the slave in doing the work, the building, owing to the carelessness of the defendant, in not repairing the same, and in permitting it to become unsafe, insecure and dangerous, which was known to the defendant, and not known either to the plaintiff, Sadler, Coxe or the slave, fell, and killed the slave; that at the time Coxe was employed, and at the time the slave was killed, the building was

insecure, and dangerous to work in ; that at the time Coxe was employed, and at the time the slave was killed, the defendant knew that neither the plaintiff, nor Sadler, nor Coxe, nor the slave, was aware of the perilous condition of the building, and that the defendant knew it, and fraudulently and with the intention to injure the plaintiff, concealed the same ; that the defendant, when Coxe was employed, fraudulently represented to Coxe that the same was safe and secure, and that there was no danger in working in it, &c.

The defendant demurred to the declaration, and the demurrer was overruled.

From the bill of exceptions it appears, that on the trial evidence was offered, conducing to prove that a slave of the plaintiff had been killed while at work as a mason in a cotton press owned by the defendant, by the falling in of the roof ; that such slave had been apprenticed by his owner to one Sadler to learn the bricklayer's trade, and was in the possession of Coxe, a master mason, by Sadler's consent ; that the defendant had applied to Coxe, as a mason, to do some repairs on the furnace of the engine of the press, within the building, saying that an accident had occurred by the sinking of the furnace, which had broken an iron stand-pipe, but said nothing as to the dangerous condition of the building ; that Coxe promised he would go with his hands and do the work. Evidence was also offered, to show that Coxe did go to the building, and examined the work to be done, and then returned with his hands, amongst whom was the slave killed, and went to work. It was also in evidence, that a heavy stack of chimneys, which ran through the centre of the building, had been inclined from a perpendicular line by the sinking of the wall of the furnaces ; that the chimneys pressed against the roof, which was of slate, and that the pressure parted the girders which supported the roof, where they had been spliced ; that the leaning of the chimney was plainly visible, but that it had not leaned enough to cause apprehension ; that the part of the building against which it pressed, had cracks in the wall, which had been there for a long time. There was evidence tending to show that the building was unsafe, and that it was known by the defendant to be so, but the evidence on these points was conflicting.

The court charged the jury, among other things, " that they should inquire if Coxe made any special contract with Perry : if he did not, the presumption was, that the hiring was under the rules applying to ordinary and usual transactions of that nature, and Perry would be liable for the consequences of any ordinary risk ; that the law, in such case, presumes the contract was made with reference to the ordinary risks and accidents of life in such employment ; but, if there was imminent danger and peril to life in working in the building, and Perry knew this, and Coxe did not know it, and had no means of ascertaining it,—if Perry himself made the contract with Coxe, and did not notify him of the danger, the defendant was liable. Or if, instead of the fact being that Coxe had no means of ascertaining the danger, he might have ascertained it, by examining the building closely and minutely, that unless he was a builder, or a carpenter, or one likely to think of examining the building from his avocations in life, he would only be expected to know such defects as a prudent man would be presumed in law to know." The defendant requested the court to charge :

" 1. That when one employs a tradesman to work, it is for the workman to judge of the risk of the undertaking, and do it or not as he thinks fit.

" 2. That, although Perry knew there were defects in the building, still, if no representation was made as to its safety, the defendant would not be liable under the declaration in this case.

" 3. That, if Coxe examined for himself and asked no questions of Perry, and he made no false statements, the defendant was not liable."

" The court refused said instructions, and charged the law to be as above recited, offering to qualify the charges asked by the defendant as stated in the latter part of his direct charge ; to all which instructions so given, and to the refusal to charge as requested, the defendant excepted."

The errors assigned are, 1st, the overruling of the demurrer to the declaration ; 2d, the instructions given to the jury ; and, 3d, the refusal to give the instructions asked.

Geo. N. Stewart, with whom was E. S. Dargan, for the appellant. (No brief on file.)

DANIEL CHANDLER, *contra.*:

*First :* As to the pleadings:

1. The demurrer was properly overruled. In an action on the case, it is not necessary to prove all the averments in the declaration : many of them, not being material, may be rejected as surplusage. Allegations of matter of substance must be substantially proved ; allegations of matter of description must be literally proved. In this case, the last averment in the declaration, that charging the "fraud," can be stricken out, and a good cause of action still be stated in the declaration. This averment is not of the essence of the action, or descriptive of the act complained of, and may be rejected as surplusage. If the declaration shows a good cause of action, it is sufficient. It may contain immaterial and unnecessary averments ; and it not being necessary to prove them, they can be rejected. In this case, the action can be sustained without alleging or proving that the plaintiff in error "falsely and fraudulently represented" the building to be safe. This averment may be rejected, and the declaration will still contain a good cause of action.—2 East 452 ; 17 John. 98; 73 Eng. Com. L. (Com. Bench Rep., 11 vol., 491,) 141 ; 3 Bar. & Cr. 2 ; *ib.* 113 ; 2 *ib.* 2.

2. The gist of the action is the knowledge of the situation of the building, by the plaintiff in error, and his concealment of it, when he employed our slave to do his work. The motive is not important. Whether the true condition of the building was " fraudulently" concealed or not, is immaterial. Fraud is not the gist of the action. If it were, then there must be a substantial allegation of fraud and proof of it. In this case, the important question is—and the declaration states it—was the dangerous condition of the building known to the plaintiff in error, and concealed from the defendant? If so, here was a breach of duty. The law will infer the motive. It need not be averred or proved, and if averred may be rejected as surplusage.

3. If the whole of the second and third averments, that state the motive and describe the concealment to be fraudulent, are stricken out, the right of the action is not destroyed, but enough remains to make the declaration a good one. The substance of the first averment is, that the building being un-

safe, insecure and dangerous to work in, which was known to the plaintiff in error, but unknown to the defendant, or his slave, he employed the slave, and induced and permitted him to work in the building ; and that the building, owing to the negligence, carelessness and neglect of the plaintiff in error in not repairing it, and in permitting it to become unsafe, insecure and dangerous, fell, while the slave was so employed, and at work in the building, whereby he was killed, &c.— This is a good averment. It contains enough to sustain the action. Nothing is said of the motive or intention, of the fraud or misrepresentation. Negligence and neglect in not repairing are alleged : its dangerous and hazardous condition is stated ; and all this being known to the plaintiff in error, but not to the defendant ; our slave is employed and killed by the falling of the building. The proof is applicable to this state of facts. The charges that were given and rejected apply to this state of facts. If then all the other averments in the declaration be stricken out, the proof of this averment will authorize the judgment. Under it, the question of negligence and neglect arises. Damages can be recovered for the negligence of the plaintiff in error in not repairing the building, and for a breach of duty in putting the slave there to work. The act itself in thus employing our slave, and inducing him to work there, subjects the plaintiff in error to damages. Whether his motive was malicious or fraudulent is immaterial. The act itself was wrong : a breach of duty was committed, and the plaintiff in error is responsible for the consequences.—17 Johns. 98.

4. In the exercise of a lawful right, a person may still be liable for damages. If it is performed under circumstances that show a disregard of the rights of others, and a neglect of a recognized duty, the party is responsible. " In reviewing the cases," says Judge Woodworth, " I am of opinion that no man is answerable in damages for the reasonable exercise of a right, when it is accompanied by a cautious regard for the rights of others—when there is no just cause for the charge of negligence, and when the act is not done maliciously." But the converse of this proposition is equally true. A man is answerable for the exercise of a right, when it is accompanied by a disregard of the rights of others, or

when there is a just cause for the charge of negligence, or where the act was done maliciously.—8 John. 421.

5. If this view of the case in reference to the first aver- ment in the declaration is not correct, then the defendant in error can, by striking out as surplusage the allegation of fraud, which is not of the essence of the action, or descriptive of the act, rely on the other averments, which are sufficient to sustain the action. The rule is, "if the averment may be struck out, without destroying the plaintiff's right of action, it is not necessary to prove it."

*Second :* As to the merits of the case :

1. Coxe, who was employed by the plaintiff in error to do the work, and who had the defendant's negro in his employ, did not know the dangerous condition of the building in which the work was to be done. It was known to Perry. The defects and the immediate cause of the building's falling, were not discoverable by ordinary prudence. The immediate or proximate cause of the accident, was the state of the build- ing—its defects—the pressure of the chimney upon the roof, and the separation of the girders that supported the roof.— The remote cause was a concealed fire under the chimney. The proximate cause was known to Perry, but unknown to Coxe. The remote cause was unknown to both. Was not Perry under both moral and legal obligations to disclose the facts to Coxe? The concealment operated to his advantage and to our injury. The facts that was known to Perry, but unknown to Coxe, in reference to the situation of the build- ing, are material, and being material, he was bound to disclose them. The concealment of a material fact that a party is bound to disclose, is equivalent to the misrepresentation of the fact. The effects are the same.

2. If a man employ me to repair an engine under his build- ing, and knows the building is in a dangerous condition, and I am ignorant of the peril I incur in doing the job, the sup- pression of such a fact, when the very undertaking of the work implied a trust and confidence on my part that no such danger or peril is incurred, would clearly make the person employing me responsible for the consequences of his act.— "His very silence," to use the language of Judge Story, "becomes expressive of trust and confidence equivalent to an

affirmative," In this view of the case, the plaintiff in error committed a fraud upon the defendant, and a damage to the defendant resulted from that fraud. This is all that is necessary to support the action. Fraud and damage, coupled together, will entitle the injured party to relief in any court of justice.—7 Johns. Ch. 200 ; 2 Kent 481 ; 1 Story's Equity § § 204 to 219 inclusive.

3. If there was any confidence or trust reposed in Perry, he was bound to make a disclosure of the true situation of the building. There was in this case a legal relation existing between Perry and Coxe. · Had a mere stranger gone in the building, and Perry had known the fact, he would have been under no legal obligation to disclose to him its situation.— But Coxe was no stranger. He went there at the instance of Perry, and was employed by him. This establishes a legal relation between the parties, and imposes on the employer the obligation to disclose to the employee the facts and circumstances which render the undertaking dangerous. After Coxe was employed Perry could do nothing, or omit to do anything, that was calculated to mislead or deceive Coxe. Did he not do so? Was not Coxe, by Perry's silence, induced to believe that there was no risk or danger except what was connected with the job itself? Had he been informed of the real facts— had he known that other workmen had refused that day to do the job, because they believed the building was in a dangerous condition, he would, being thus put upon his guard, have examined the building for himself. The concealment of the situation of the building, under the circumstances disclosed by the record, was a breach of duty. Coxe was employed to do a job. There was no danger in the work itself, but there was in the building. This was known to Perry, but unknown to Coxe. The legal relation of employer and employee implies confidence and trust. If a man employs me to do a job, I trust him so far as to presume there is no concealed or unexpected danger in the undertaking. If there is, and it is known to him, but unknown to me, it is a breach of duty if he does not disclose it. If concealed, and injury follows, there is no difference, morally or legally, between the concealment of the fact and the false representation of the fact. They work the same wrong, and proceed from the same

43

motive. In either case, Perry was guilty of a breach of duty, and is responsible for the consequences. To make him thus responsible, neither a false representation, nor a fraudulent concealment was necessary, but the mere concealment of a material fact, that might have influenced the course and conduct of Coxe, was of itself sufficient. It involves a breach of duty, and a violation of good faith. It destroys all confidence, and makes every man assume all risks and dangers, seen and unseen, known and unknown.

4. In this case, the danger was not in repairing the furnace. Coxe examined that, and he was willing to risk the danger connected with the job he was to undertake. But the danger was in the building, and with that he had nothing to do. He was employed to repair the furnace, not the building, and so far as the building was concerned, he was bound to know only such defects as could be discovered by ordinary prudence.— So far as the furnace was concerned, the job was a safe one. The danger proceeded from causes disconnected with the job he was employed to do. This danger was in the building, and its condition was known to Perry, but unknown to Coxe. Under such circumstances, the duty of Perry is apparent, and his liability is as certain as his concealment of the condition of the building and the risk we incurred was wrong. This view of the case covers all the charges that were given, and all that were rejected.

GOLDTHWAITE, J.—The demurrer was properly overruled. The declaration is in case, and alleges, that the negro of the plaintiff was bound for a term of years to one Sadler, a bricklayer, to learn the trade; that the defendant engaged one Coxe, who was in the employ of Sadler, and was his agent, to do certain brick work about the boilers, within a building belonging to the defendant, used as a cotton-press, which building was unsafe and dangerous, and known to be so by the defendant; that said Coxe took said slave with him, to assist in doing the work, and while engaged in it, in such work, the building, owing to the carelessness and neglect of the defendant in not repairing it, fell, and killed the slave. It also avers, that the dangerous condition of the building was known to the defendant, and unknown either to the plain-

tiff, Sadler, Coxe, or the slave, and that the defendant fraudulently and with the intention to injure the plaintiff, concealed the same. It further avers, that when Coxe was employed to do the work, and when he and the slave commenced the same, neither they, nor the plaintiff, nor Sadler, had any means of ascertaining the dangerous condition of the building; and that the defendant, knowing of its dangerous condition, fraudulently represented to them that it was safe and secure.

The only defect which is insisted upon by the plaintiff in error, is duplicity; but the declaration is relieved from this objection, by considering the last allegation as surplusage only, which we are authorized under the rules of pleading to do, as the whole of it may be struck out, and the declaration still be sufficient.—Williamson v. Allanson, 2 East 452; Panton v. Holland, 17 John. 92.

In relation to the charge of the court, we entertain no doubt, that in ordinary cases, where a workman is employed to do a dangerous job, or to work in a service of peril, if the danger belongs to the work which he undertakes, or the service in which he engages, he will be held to all the risks which belong either to the one or the other; but where there is no danger in the work or service by itself, and the peril grows out of extrinsic causes or circumstances, which cannot be discovered by the use of ordinary precaution and prudence, the employer would be answerable, precisely as a third person, if the injury or loss was occasioned by his neglect or want of care. In such a case, the injury would be outside of the employment, and the employer would, as to such injury, be in fact a third person, and fall within the same rule as to responsibility.

We are clear, also, that, without reference to the fact whether the injury or loss was occasioned by the carelessness or neglect of the employer, in not using due care in relation to the cause of the danger (as in allowing the walls or roof of a building to remain, for an unreasonable length of time, in a condition hazardous to the safety of others), if he employs a workman in a service, which is apparently safe, but which becomes hazardous from causes disconnected with the service, and not discoverable by the exercise of ordinary prudence, he would be bound, upon the strongest principles of morality

and good faith, to disclose to those whom he has employed the danger to which they were exposing themselves, if those dangers were known to him; and the failure to make this disclosure, under such circumstances, would be a breach of duty, for which the employer would be held responsible, if, while engaged in the work, the workman sustained an injury. These views are based upon legal principles familiar to all. If a slave is hired without any special contract, the law implies that he is not to be employed in labor or service requiring more than the ordinary exposure; and in all contracts, the suppression of material facts, which one party is bound, in conscience and in duty, to disclose to the other, and in respect to which he cannot innocently be silent, is regarded as evidence of fraud.

To apply these principles to the case before us: The court charged, that if there was imminent danger and peril to life in working in the building;—if the defendant knew that such was the case, and Coxe did not;—and if .the defendant himself made the contract with Coxe, and did not notify him of his danger,—in that event, the defendant would be liable. The court also charged, that, if, instead of Coxe having no means of ascertaining the danger, he might have ascertained it, by a close and minute examination of the building, unless he was a builder or carpenter, or one likely to think of examining the house from his avocations in life, he could only be expected to know such defects as a prudent man would be presumed in law to know.

We consider this charge, as simply asserting the legal proposition, which we have already recognized, that where the danger does not consist in the service, but grows out of extrinsic causes, not to be discovered by ordinary prudence, the employer is bound to disclose the danger, if known to him and unknown to the workman.

It is urged, however, on the part of the plaintiff in error, that the *gravamen* of the declaration is, the *fraudulent* concealment of the danger; and that the charge given ascertained the responsibility of the defendant, without reference to fraud. The words of the declaration are, that the defendant, "fraudulently, and with the intention to injure the plaintiff, concealed the true situation of the building, and the danger of working

within it, from" &c.   The allegation of fraud, here, is not descriptive, but refers to the intention of the defendant, at the time of the alleged concealment (Panton v. Holland, *supra*); and as the concealment of the danger, under the circumstances alleged in the declaration, was a breach of duty, and therefore sufficient to sustain the action, the averment of the fraudulent intent, was not essential, and may for that reason, as a good cause of action remains without it, be rejected as surplusage. Panton v. Holland, *supra*.   In this aspect, as the charge asserted a correct legal proposition, it was free from error.   It is not pretended that the other portion of the charge was erroneous.

The views we have expressed, are decisive of the refusals to charge.   A false representation was not necessary to maintain the action under the declaration.   The record affords no evidence that Coxe did make any examination of the building ; and ordinary prudence did not necessarily require him to make inquiries of the defendant as to the condition of the building.

The judgment is affirmed.

NOTE BY REPORTER.—A rehearing having been granted in this case, on the application of the appellant's counsel, the cause was re-argued in writing ; but the court adhered to its first opinion.

MR. DARGAN, for the appellant.—The principles asserted in the opinion, as I understand it, I do not controvert, but I do not think they cover the whole case.   The last charge requested by the defendant below is clearly governed by a principle entirely different, and I think it ought to have been given.   No one will deny, that, if a carpenter or mason is employed to repair a building, the defects of which are open to common observation, and he examines the work to be done, and, without asking any questions, agrees to do it,—he then judges for himself, and assumes the risk incident to the repairs ; unless, indeed, there is some secret or hidden defect or danger, which is known to the employer, but unknown to the workman, and the injury results from this secret source of danger.   I take the rule to be this, that fraud and injury must both concur, to give a right of action in such a case.   For

instance—if no injury had resulted from the secret danger, there could have been no right of action ; or, if the employer had disclosed the secret danger, there could have been no action against him, although the injury resulted from that danger. The correct rule is laid down by C. J. Kent, in Upton v. Vail, 6 Johns. 180, where it is said, " Fraud, or deceit, with damages, gives a cause of action ;" but if either is wanting—that is, either the fraud, or the damage—no action can lie. Now I think it clear from the bill of exceptions, that there was no secret danger or defect: the defects, if any, were open to common observation ; Coxe saw the chimney and furnace, and that the chimney, from the sinking on one side, did not stand perpendicularly ; and this was all that Perry knew. If, then, all the defects which Perry knew were open to common observation, and he made no false statement in reference to them, he certainly could not be guilty of a fraud. In Keates v. Cadogan, 70 E. C. L. R. 591, the Court of Common Pleas held, that there was no implied duty on the owner of a house, which is in a ruinous condition, to inform a proposed tenant that it is unfit for habitation ; and that no action will lie against him for an omission to do so, in the absence of a warranty or actual deceit. The ground on which the court went, was, that the condition of the house could have been ascertained by the tenant by inquiry, or ob-servation, and that the landlord had no reason to presume that he would not make the proper inquiry.

2. The charge given, in my opinion, cannot be sustained, when tested by the principles sanctioned in the opinion ; for, although secret peril to life not disclosed would be a fraud, yet, to give an action, it must appear that the damage resulted from that secret cause of danger. Suppose there had been a secret danger, known to Perry but not disclosed by him, and also a visible cause of danger, which was known to all and duly considered, and that the damage resulted from the latter ; this damage certainly would not give a right of action.— Testing the charge by this view, it was well calculated to mislead the jury under the evidence. The injury, all will perhaps say, resulted from the leaning of the chimney against the roof ; and it is shown that Coxe examined the furnace and chimney, and saw that the latter did lean. Now, although

the jury might have believed that this was the immediate cause of the injury, yet, under the charge given, they would have been compelled to find for the plaintiff, if they believed there was also a secret danger in the building not disclosed : the charge, therefore, is too broad, when applied to the evidence.

PER CURIAM.—We have carefully reviewed the grounds on which the opinion heretofore delivered in this case rests, and have attentively considered the authorities to which we have been referred by the counsel on the rehearing ; but we are unable to perceive any good reason for changing our conclusions, as they are set forth in the opinion heretofore delivered by Mr. Justice GOLDTHWAITE. A further examination of the record, and of the law arising upon the points presented by it, has only tended to confirm us in the correctness of our former opinion.

Let the judgment be affirmed.