CARTTER & COMPANY v. COTTER.

1. Under the ruling in *Ellison* v. *Ga. R. R. Co.*, 87 *Ga.* 691, the declaration in this case was amendable, the amendments were properly allowed and no new cause of action was introduced.
2. The plaintiff, an inexperienced employee, being put to work with machinery that was deficient and therefore unsafe, and by reason of his inexperience not knowing of the danger which he incurred on account of the deficiency, he was entitled to recover for a personal injury which resulted in large part, if not wholly, from the use of such unsafe machinery.
3. The court committed no error in admitting or rejecting evidence, or in charging the jury; and there was no error in refusing a new trial.                                   *Judgment affirmed.*

February 1, 1892.

Amendment.   Master  and  servant.   Negligence. Before Judge MADDOX.   Floyd superior court.   March term, 1891.

Cotter sued Cartter & Company, alleging: On June 9, 1888, he was employed by defendants at Rome,

Georgia, they being engaged as bridge-builders in build-
ing a bridge across the Etowah river, as a day-laborer
upon the construction of the false work of the bridge.
There were employed upon the work twenty men, and
its nature was such as to require the constant time and
work of so many. Rees was foreman and Hubbard
superintendent, and these two were in charge of the
work for defendants. At the time mentioned the gang
of twenty was short four men, and the entire work of
the bridge had to be done by sixteen hands, each man
being required to do more than he was or ought to have
been expected or required to do when the proper and
necessary force was on hand. While so engaged in the
work, petitioner was ordered by the foreman to work at
a certain windlass which was being used in drawing a
pile out of the water below and under the place where he
stood and was required to stand. The windlass was defec-
tive and in bad order, in that it had no dog or brake on
it whereby it could be controlled and managed by the
man managing it, so that when the pile was lifted up
by the man at the windlass he had no control of the
same except to hold it up by main strength. While
petitioner was so drawing up the pile at the windlass
as stated, by reason of carelessness [and negligence] on
the part of [defendants and their] tackle-machines and
workmen managing said pile, it slipped from its moor-
ings, and by reason of the windlass having no dog or
brake the handle thereof was jerked out of petitioner's
hand very swiftly and violently, and rapidly revolving
struck him on the shoulder, knocking him down, and
upon rising to his feet the handle again struck him on
the forehead, again knocking him down ; rising again
in a dazed condition and blinded from the blood flowing
from his wound, the handle for the third time struck
him twice on the back of the head knocking him down
in an entirely unconscious state. The declaration then

alleged the nature of his injuries; and further, that he was injured by the negligence, carelessness and indifference of defendants by doubling work on their employees and furnishing defective machinery, and requiring them to use it, and that they and their agents well knew the defective condition of the windlass and were responsible for the injury.

Plaintiff was allowed to amend by alleging: He was informed by the foreman that the windlass and all the machinery was safe and in order. Petitioner was wholly unacquainted with the machinery, and did not of his own knowledge know whether it was safe or unsafe, and relied upon and trusted the declaration of defendants and its foreman; nor did petitioner know how many men were required to manipulate and work the machinery. At the time petitioner was injured the foreman took hold of the windlass with him and together they drew up a heavy log, and when they had wound it partly up the foreman was called off and left petitioner alone to hold the windlass, and it was impossible for him to abandon his hold upon it; and while he was thus holding the windlass, the log to which it was attached gave way and fell with its full weight upon the rope and jerked the windlass from his grasp, and thereby injured and damaged him. He did not know of the defects in the machinery, nor that defendants were working with an insufficient number of hands, until after he was injured; and defendants, well knowing that said machinery was defective and dangerous, neglected to repair and continued to use it.

A trial was had, and there was a verdict for plaintiff for $350. A new trial was granted, and the plaintiff was allowed to amend as follows: He was a common laborer, and was employed by defendants to do common manual labor on the bridge. Defendants neglected to furnish for the use of their employees adequate, suitable

and safe machinery and tools, and neglected to inspect
and keep in repair the machinery and tools furnished.
They furnished to and for the use of plaintiff a ma-
chine, commonly called a crab, which was defective,
broken, out of repair and dangerous, in that it had no
dog and was unfit for the use and service to which it
was put.   Plaintiff was not a mechanic and was not ac-
quainted with the construction and necessary parts of
the crab, and had no notice or knowledge that the
crab was defective, unsuited to the use made of it,
nor that it was in any way dangerous.   Defendants
knew the crab was defective, broken and dangerous,
and did not notify plaintiff of its condition, nor repair
it, but knowingly permitted him to use it.   His injuries
were caused by the absence of a dog on the crab; if
a dog had been attached to the crab in a proper
manner, the dog would have arrested the motion of the
windlass when it was jerked out of petitioner's hands,
and he would not have been injured, the office and sole
purpose of the dog being to prevent the windlass re-
volving backwards when sudden and unusual weights
drop upon the ropes.   The conduct of defendants made
a case of gross negligence.   The plaintiff also amended
by alleging the non-residence of defendants.

Defendants moved to dismiss the petition upon the
grounds that the original declaration set forth no cause
of action; the amendments were improperly allowed
because there was nothing in the original pleadings to
amend by, and because they set forth new causes of
action; and in the declaration and amendments there
was no cause of action set forth.   This motion
was overruled.   The jury found for the plaintiff $440;
and defendants' motion for a new trial having been
overruled, they excepted.   The motion contained the
general grounds that the verdict was contrary to law,
evidence, etc., and that the verdict was contrary to the

charge and to certain portions of the charge of the court. Also, the following grounds :

The court charged : "He must show you that it was the negligence of this company in failing to furnish them with proper tools or proper implements, reasonably safe implements ; that the implement was defective and by reason of the defect in the implement this injury occurred ; he must show you that he did not know it or by the use of diligence he did not or could not have known of it ; and if he could not have avoided it by the exercise of ordinary care, then he can recover in this case." This charge was error because the court, in summing up the contingencies upon which plaintiff would not be entitled to recover, failed to include that of the negligence of co-employees, and having omitted this contingency, nevertheless concluded the paragraph of the charge with the broad statement that if the contingency stated did not exist, "then he can recover in this case." Afterwards in the course of the charge the court said : "If you find it was through the negligence of co-laborers he cannot recover," and in summing up used this language : "and that it was not caused by the negligence of his co-employees."

The court charged : "I am requested to call your attention to this part of the case, that in case you find that this machinery was defective and that this ratchet ought to have been there on this dog, as they call it, and if you find that this injury would not have occurred if it had been there, and you find that this plaintiff could not have avoided this injury by the exercise of ordinary care, and it was not caused by the negligence of his co-laborers, the plaintiff would be entitled to recover, that is, if the dog had been upon this implement, upon this crab." This charge was error because given after the court had concluded its general charge and the case was about to be given to the jury ; and the special

error complained of is, that in summing up the substance of the general charge, the court failed to specify the plaintiff would not be entitled to recover if the defect was a patent defect, but the court, although leaving out the matter of patent defect, nevertheless charged that upon the contingencies stated, "the plaintiff would be entitled to recover."

The court charged: "My attention is called to this by defendants' counsel, that you are to determine from the facts in the case, if there are any facts offered to show whether the plaintiff could have put on the ratchet if it had been there, could he have put it on, under the circumstances, if it had been there;—of course you are to consider all those circumstances. If you find that the ratchet or dog was a necessary part of this implement and he could have put it on, and if he had done so and it would not have saved him, or if he could and it would not have saved him, he could not recover; but if he could have put it there and it would have saved him, why he ought to recover." The court erred in using the word "could" in this charge where "would" should have been used; and the charge was misleading and confusing.

The court erred in allowing the last two amendments made during the progress of the trial, the same being objected to upon the ground that they presented a new cause of action.

The court erred in not dismissing the declaration on the grounds stated in the motion to dismiss.

The court erred in allowing plaintiff to testify: "I suffered pretty heavy pain at the time, which continued about two weeks. I have suffered pain since, but not so dreadfully. I suffered for two weeks continual pain; from that time down I suffered from pain in my head when it was hot. That blow had the effect to hurt my hearing; the effect of the blow upon my senses has been such that I cannot stand the heat of the sun; the heat

of the sun just gives me the headache." Defendants objected to this testimony upon the ground that there was no allegation in the declaration to support it. It was admitted upon the following statement from the court : "They can show the character and extent of the injury at the time and the suffering at that time, and if there was continued pain they may show that to throw light on the pain and suffering at that time."

The court erred in overruling defendants' motion to nonsuit the plaintiff for want of sufficient evidence to support the declaration ; and because the plaintiff's evidence showed that the injury was caused by his own negligence or want of care or by the negligence of co-employees, that it could have been avoided by the use of ordinary care and diligence on his part, that the defect in the machinery (if a defect) was patent, and that he knew or could have known the danger he was in while using the machinery.

. The court refused to allow defendants' witness, Reece, to answer the following question : "State whether or not a man of ordinary intelligence would or could not know the danger of holding to a crab-handle without a dog, or without a chock, with heavy weight attached to the other end that might jerk off." This was error because the evidence showed that Reece was an experienced bridge-builder, familiar with the use of crabs and the working of them by men, and therefore he should have been allowed to give his opinion.

The court refused to allow Reece to answer the following question : "State whether or not it would be easily determined by a man standing without the same being chocked and a heavy weight attached to the other end of the rope, that if the weight attached there suddenly jerked, that that would be a dangerous position for him to occupy." This was error because Reece was shown by the evidence to be an experienced bridge-

builder and experienced in the use of a crab. Further error was assigned because, when the question was objected to by plaintiff's counsel, the court, in refusing to allow the witness to answer (the time being the hour for adjournment), said in the presence of the jury, "Yes, I will give you till to-morrow morning to put your question in the proper shape." This statement was error because calculated to lead the jury to believe that counsel for the defence was driven to an extremity in his effort to put in testimony for the support of the defence.

Newly discovered evidence. In support of this ground defendants produced the affidavit of one Mooney to the the following effect : At the time Cotter was hurt by the revolving of the crab-handle in June, 1888, at the time of the building of the iron bridge for the Chattanooga, Rome & Columbus railroad at Rome, Ga., across the Etowah river, affiant was in a boat situated near the bank of the river and near the work that was being done in the construction of the bridge; he saw Cotter standing at the crab with one hand, possibly both hands, resting lightly on the crab-handle ; just before that time Cotter and the foreman, Reece, had wound the pile up from the river and lodged it in the boat below where workmen were engaged preparing the pile for use; after the pile was lodged on the boat, Reece walked from the crab to the front of the false work ; as he walked along he stooped down and took hold of the rope with which the pile had been wound up ; the rope was slack ; the pile afterwards rolled off the boat, jerked on the rope, and turned the crab-handle which struck Cotter on the head. Affiant did not communicate these facts to defendants or their counsel until after the trial, and did not know they were material. Also, the affidavits of the member of defendants' firm who had charge of the preparation and trial of the case, and of defendants' attorneys, as to their ignorance of this testimony of Mooney until after the trial.

DEAN & SMITH, for plaintiffs in error, cited Cooley, Torts, ed. 1888, pp. 73, 76–79, 650, 657; Wood, M. & S. ed. 1877, pp. 692, 698, 740, 754; 2 Thomp. Neg. ed. 1880, pp. 983, 1028; 80 *Ga.* 227, 427; 78 *Ga.* 260; 74 *Ga.* 64; 70 *Ga.* 566; 68 *Ga.* 699; 55 *Ga.* 133; Code, §2202; 3 Am. R. 511; 21 Atl. Rep. 324; 22 *Id.* 112; 19 Johns. 233; 2 Hilt. 217; 115 Mass. 304; 46 Penn. St. 192; 10 Wall. 176.

REECE & DENNY and DABNEY & FOUCHÉ, *contra*, cited 14 Am. & Eng. Enc. L. 844, 845; 3 *Id.* 375; 27 Pac. Rep. 701, 728; 49 N. W. Rep. 1028; 48 *Id.* 862; 28 N. E. Rep. 375, 1091; 17 S. W. Rep. 748; 46 Fed. Rep. 160; 5 Lawson, Rights, 1201; Whit. Sm. Neg. 26; L. R. 9 Ex. 157; 8 Allen, 441; 32 Minn. 331; 94 U. S. 469; 86 *Ga.* 538; 59 *Ga.* 545; 74 *Ga.* 64; 80 *Ga.* 568; 79 *Ga.* 1.