## 3063.　BEARD v. GEORGIAN MANUFACTURING CO.

1. If a master, by misrepresenting to his servant one of the conditions of a particular piece of labor, induces the servant to enter upon an attempt to perform it with an inadequacy of fellow servants, and injury results to the servant from the task's proving to be beyond the physical capacity of those engaged in attempting to perform it, the servant may ordinarily recover from the master for the master's wrong in fraudulently exposing the servant to an extraordinary hazard; provided that the task was one as to which the master's knowledge was actually or constructively greater than that of the servant.

2. Every proprietor of a business is conclusively presumed to have knowledge of the nature of the constituents and general characteristics of the substances and things used in his business—such a knowledge as that he can give directions for the carrying on of his business with ordinary safety by servants performing it with ordinary care. This doctrine (usually referred to as the doctrine of assumption of skill) frequently makes the knowledge implied against the master superior to that implied against the servant as to things used in connection with the master's business.

3. If a master directs a squad of servants to raise and carry an article, as to the weight of which he has knowledge, actual or constructive, and, in order to induce the servants to carry it, materially misrepresents the weight, and if, while the servants are in the act of carrying the load, it proves too much for the physical strength of those who are attempting to carry it, and it falls and injures one of the servants, the wrongful act of the master in misrepresenting the weight of the article is ordinarily to be regarded as the proximate cause of the injury.

4. While a servant may be held to assumption of risk or contributory negligence, notwithstanding false information of the master, in some cases, the petition in the present case does not disclose any reason for applying either one of these doctrines as against the servant.

DECIDED JANUARY 24, 1911.

Action for damages; from city court of Floyd county—Judge Reece. November 21, 1910.

*Eubanks & Mebane,* for plaintiff.

*Harper Hamilton,* for defendant.

POWELL, J. The case comes up on the sustaining of a general demurrer to the plaintiff's petition. It is alleged that the plaintiff was employed as a common laborer in the defendant's plant. The defendant had, lying on the ground, a piece of iron, nine feet in length, three feet in width and one foot in thickness, which tapered off at each end, being somewhat irregular in shape. Its actual weight was about 2400 pounds. The defendant, through its foreman, directed the plaintiff and nine others to move this piece of iron by placing five hand-bars under it and raising it and carrying

it along.   He told the defendant that the piece of iron weighed
only 1100 pounds, and that ten men could carry it safely and with-
out danger.   Acting on this assurance, the plaintiff took hold of one
of the hand-bars—the last hand-bar at the rear end—having a fel-
low laborer at the other end of the bar.   Holding the hand-bar just
ahead of him were two other laborers, one of them a sixteen-year-
old boy named Smith.   The piece of iron was raised from the
ground by the ten men, when, because of its great weight and of
Smith's lack of physical strength, Smith gave way under the load.
This caused the man at the other end of his hand-bar to give way;
this dropped the weight of the load back upon the plaintiff and his
companion.   The companion gave way, throwing the entire weight
upon the plaintiff, thereby wrenching his body and inflicting per-
manent physical injuries upon him.   This outlines the facts stated
in the petition.

The grounds of negligence assigned are, (1) that the defendant
furnished incapable and incompetent hands, that is, hands ineffi-
cient to carry the weight of the load, and (2) that it wrongfully
represented to and assured the plaintiff that the piece of iron
weighed only 1100 pounds, when as a matter of fact the defendant
and its foreman knew that it weighed about 2400 pounds, it being
explained in this connection that if the iron had weighed only
1100 pounds, as represented, the ten hands could have carried the
same without injury to the plaintiff.   The defendant is charged
with both actual and constructive knowledge of the weight of the
iron.   The plaintiff's lack of knowledge, actual or constructive, is
also asserted.

We think that the petition sets out an actionable transaction,
and that the court erred in sustaining the general demurrer.   The
gravamen of the petition is that the defendant violated its duty of
not exposing the plaintiff as one of its workmen to an abnormal
risk of danger which he would not knowingly have assumed.   The
liability of the master to the servant is frequently predicated of
transactions involving a quasi misrepresentation of the risk,—that
is, of cases where the master, without actually intending to deceive
the servant, allows him to go ahead and work in the face of danger
unknown to the servant, without warning him of the danger.   See
Labatt, Master and Servant, § 59.   In this case the petition alleges
not mere constructive culpability against the master, but actual

culpability—an intentional deceiving as to the risk about to be encountered. Knowing that the piece of iron weighed more than 2000 pounds—too heavy a load for ten men to undertake to lift without danger, he, through his foreman, represented to the defendant, in order to induce him to undertake the work, that it weighed only 1100 pounds—such a load as he and his nine fellow laborers might reasonably have undertaken to transport. Assuming that it requires special skill and experience to estimate, with a fair approach to accuracy, the weight of a large irregularly shaped piece of iron (and we think this a very fair assumption, for it is doubtful that an ordinary, inexperienced man would form anything like a fair estimate of the weight merely by superficial and casual observation of a large piece of iron), it would be a wrongful transaction for the master to put to the work of lifting such a piece of iron a squad of hands inadequate to lift it, whether the master actually knew the weight of the iron or not; and if, in such a transaction, one of the servants was injured by reason of the fact that the load proved too heavy and the number of servants placed to carry it proved inadequate, the servant would, in ordinary cases, have a right to have the question of the master's negligence submitted to the jury, on the theory that the master had exposed the servant to an abnormal danger without warning. To make clearer the proposition just announced: the master, by engaging in a business which requires the handling of metallic substances—as iron in this case—is held in law to a knowledge of the weight and properties of the substances so being used in his business. This knowledge is imputed to him. The doctrine that imputes it to him is called in legal terminology the assumption of skill. See Pollock on Torts (8th ed.), 29, 530. In legal contemplation, every man who carries on a business warrants to those who are interested in the safe conduct of that business that he has the requisite skill and experience to conduct the business safely. As to this, the law has a standard which does not vary with the actual capacity of the particular proprietor; "if he fails, it is no excuse that he did the best he, being unskilled, actually could. He must be reasonably skilled at his peril." Pollock on Torts (8th ed.), 29. A common laborer working in a manufacturing plant of the kind operated by the defendant has no such assumption of skill imputed to him. The statement, frequently found in reported cases and in the text-

books, that as to such matters the knowledge of the master is presumptively superior to that of the servant, applies. It is to be understood, of course, that we are not now discussing those matters as to which any ordinary person without special skill would have knowledge, or as to which any prudent servant, by reason of the very fact of his experience in service, would have actually or constructively obtained knowledge. So that in the case before us, even if the master had honestly misjudged the weight of the iron and yet had sent these ten hands there to move it, he would have been chargeable in law with an act as to which negligence could be imputed; that is, of assigning an inadequacy of servants to a task liable to be fraught with danger by reason of their physical incapacity to perform it safely. And the servants undertaking the work would not necessarily have been held to have assumed the risk or to have been guilty of contributory negligence in undertaking the task, because knowledge (actual or constructive) of the facts and of the danger are elements in such cases entirely controlling both these questions—the question as to assumption of risk and as to contributory negligence. But in the case at bar, the allegations of the petition make even a stronger case of liability, for it is alleged that the master actually knew of the weight of the iron and fraudulently and intentionally deceived the servant as to it. This presents a case of what is often referred to as the master setting a man-trap for the servants. As Justice Lamar said in the case of *Babcock Lumber Co.* v. *Johnson,* 120 *Ga.* 1030, 1035 (48 S. E. 438), "But if he [the master] knows of the danger,—knows that there is a trap,—and yet sends the employee unwittingly into the trap, he is not only morally guilty, but civilly liable. And of course the master might be liable even in those cases where he is not morally guilty, for he might be chargeable if his agent had knowledge of the trap. And even where there was no actual knowledge of the danger, yet if there was actual knowledge of facts suggesting the existence of danger, and leading a prudent man to make an inspection, he could not fail to follow up the inquiry suggested by what he actually knew, and then rely on his negligent ignorance." Some judge (the name of the judge and of the case can not now be recalled) has expressed it thus: "The master must not use any art to conceal dangers." A similar notion is expressed by Lord Cranworth, see C., in Paterson *v.* Wallace, 1 Macq. H. L. Cas. 748: "It is the master's

duty to be careful that his servant is not induced to work under a notion that tackle or machinery is staunch and secure, when, in fact, the master knows or ought to know that it is not so." Another learned English judge, in Cook *v.* Bell, 20 Sc. Sess. Cas., 2d series, 137, has said: "There are certain things incumbent on the master upon which the servant is entitled to rely, and if the master fails in any of the things, and the servant is thereby led into false security, the master must be responsible." In the leading English case of Woodley *v.* Metropolitan Dist. R. Co., L. R. 2 Ex. Div. 384, 46 L. J. Ex. N. S. 521, while it was determined in the case that the master had not deceived the servant as to the danger, and a recovery was refused to the servant because of his knowledge of the very danger through which he was injured, Chief Justice Cockburn, in stating the general right of the servant to recover, said: "A man who enters on a necessarily dangerous employment with his eyes open, takes with it its accompanying risks. On the other hand, if the danger is concealed from him, and an accident happens before he becomes aware of it, or if he is led to expect, or may reasonably expect, that proper precaution will be adopted by the employer to prevent or lessen the danger, and from the want of such precautions an accident happens to him before he has become aware of this absence, he may hold the employer liable." In the case of Perry *v.* Marsh, 25 Ala. 659, it was held that a recovery might be had for injuries received by the servant, resulting either from the fraudulent concealment or from the fraudulent misrepresentation of the defendant as to the dangerous conditions. In the case of *Cartter* v. *Cotter*, 88 *Ga.* 286 (14 S. E. 476), the master's direct misrepresentation to the servant as to the danger was an element recognized by the court in allowing the servant to recover. Indeed, the books are full of cases in which the master has been held liable for injuries resulting to the servant from the master's either misrepresenting the danger or else failing to inform the servant as to it.

Able counsel for the defendant in error does not so much seek to controvert the soundness of the proposition we have just been discussing; he rather seeks to avoid it by asserting the proposition that the injuries in the case at bar must be attributed to the negligence of a fellow servant, rather than to the negligence of the master. The view he presents is that since the immediate cause of the falling of the piece of iron, and the consequent injury to the

plaintiff, were produced by the incapacity of the boy (Smith) to carry his part of the load, Smith's act in allowing the hand-bar to give way must be regarded as the proximate cause of the injury. Keeping in mind the allegations of the petition, we may see that what Smith did was not so much a causal act, in the true sense, as it was a condition upon which the defendant's negligence became an active and effective cause of the plaintiff's injury. Taking the facts as they are stated in the petition as true (and, of course, on demurrer they are taken as the truth of the case), if the piece of iron had weighed only 1100 pounds, the ten men could have carried it; Smith's strength would not have failed him, and if his strength had not failed him, his fellow laborer at the other end of the hand-bar would not have gone down; and if he had not gone down, the defendant's fellow laborer would not have failed under the load; and if these things had not occurred, the defendant would not have been hurt. From a legal point of view, it was not the failing of these fellow laborers that caused the hurt to the plaintiff; the part they played in the matter was that they were physically unable to prevent the situation brought about by the defendant's wrong from resulting in hurt to the plaintiff.

If it turns out at the trial that the plaintiff's injury did not result from the dangerous situation produced by the defendant's wrongful misrepresentation as to the weight of the iron, but was caused by Smith's negligently turning the hand-bar loose, this will be good as a defense. If it turns out at the trial that the injury resulted from Smith's general physical incompetency, i. e. from the fact that he could not have supported the weight of his proportionate part of the iron, even if it had weighed only 1100 pounds, then that incompetency, or rather lack of physical capacity, may be so far regarded as the proximate cause of the injury as to preclude the plaintiff from recovering, on the theory that he voluntarily assumed the risk of lifting 1100 pounds with the help of a boy not capable of bearing his proportionate part of that load—he (the servant) not being misinformed as to the boy's age and physical development. These things, which able counsel for the defendant has presented in his argument, are not disclosed by the petition, and, if they exist in the case, can be set up only as matter of defense, to be passed on by the jury under appropriate instructions. The judge erred in sustaining the demurrer. *Judgment reversed.*