23323. PADGETT *v.* SOUTHERN RAILWAY COMPANY *et al.*

DECIDED JANUARY, 1934.

*Ben C. Williford,* for plaintiff.
*McDaniel, Neely & Marshall, W. N. Baird,* for defendant.
BROYLES, C. J. P. D. Padgett brought suit against the South-

ern Railway Company and W. D. Morris for damages because of personal injuries, alleging that Morris was an employee and agent of the railway company and petitioner's foreman with authority to give petitioner orders with reference to the work being done by him for said company; that petitioner was an employee of the railway company, and subject to the orders of Morris; that petitioner is an electrician's helper and was employed by the railway company as such; that Morris is a painter, and on October 7, 1932, petitioner was directed to work under him as a painter's helper, a work he knew nothing about; that on said date Morris was engaged in painting the defendant's office building, which is eight or nine stories high; that petitioner had never before worked as a painter's helper; that in performing his duties it was necessary to pull a painter's stage, a platform about 18 feet long and 4 feet wide, and weighing about 1000 pounds, up and down the side of said building, on ropes, one attached to each end thereof; that Morris told petitioner "that said stage weighed only about 100 pounds, was light, and would be easier to pull the higher he got;" that petitioner is a small man weighing about 120 pounds; that the cables at each end of said painter's stage were fastened to two sky-hooks that were hooked over the top of the south end of said building in such position that the painter's stage would operate up and down about the central portion thereof; that there were two large columns along the center of the south end of the building extending practically from the bottom to the top; that the columns stood out about 30 inches from the walls of said building; that there were windows and doors opening on each floor of the building; that the sky-hooks were thrown over the top of said building on the outside of each of said columns, causing the painter's stage to drag against them, thereby making it heavier and more difficult to operate; that about three o'clock in the afternoon on October 7, 1932, Morris, the foreman, went to the top of said building and directed petitioner to bring up the painter's stage; that petitioner at the time was working with another fellow servant and operating a hoisting machine at one end, and the other servant, a machine at the other end of said painter's stage; that the machine was one used for climbing said cables and pulling up said painter's stage, and was operated by hand; that petitioner operated the machine at his end of the stage until the same was elevated to about the third floor, when by reason of the increased tension and

weight of the stage, it became so heavy and hard to pull that he was placed under a severe strain; that petitioner called to Morris, the foreman, and informed him that he was under a great strain, and asked that he be relieved therefrom, which request Morris answered by ordering and commanding petitioner to work on, and advised him that the work would become lighter as he advanced higher; that the work, instead of getting lighter, became heavier and more straining the higher petitioner went; that petitioner again requested that he be relieved, and asked that the doors and windows along the side of the building be opened so that he might escape from the stage and get relief; that Morris refused to relieve petitioner, and also refused to open, or allow to be opened, any of the windows or doors along the building, and continued to order petitioner to proceed to elevate the stage to the top of the building; that petitioner proceeded to execute the orders, there being no other way to leave the platform until he reached the top of the building; that petitioner received described injuries as a result thereof; that petitioner was in the exercise of ordinary care and diligence, was a stranger to the work, and did not have equal means with the defendants of knowing the weight or dangers of operating the machine; that the foreman did not inform him of the true weight and strain necessary to operate the machine, but informed him that it was very light, weighing about 100 pounds, and easy to operate, and would get easier the higher he got; that had the sky-hooks been placed over the top of the columns, it would have allowed the stage to swing clear therefrom, and made the operation thereof easier and lighter, but, as it was, the stage dragged against the columns, which made it heavier and more difficult to operate the higher it got, and that this fact was or should have been known by the defendants, but was unknown to petitioner. The petition alleged that the defendants were negligent in requiring petitioner, a stranger to the work, to hoist the stage when they knew or should have known that the strain was too great for him and would increase the higher he got; in representing to petitioner that it weighed only about 100 pounds when they knew or should have known that it weighed 1000 pounds; in refusing to open the doors and windows so that petitioner might escape, and in refusing to give him relief; in closing and keeping closed the doors and windows, making it impossible for him to escape; in misrepresenting to petitioner that the stage would get

lighter the higher he went, when they knew or should have known that it would get heavier.

The court sustained a general demurrer to the petition, and to this ruling the plaintiff excepted.

We have carefully considered the decisions applicable to the facts of this case, and agree with the insistence of counsel for defendants in error, that an employee assumes the usual and ordinary risks of his employment; that he is bound to take notice of the *ordinary* and *familiar* laws of nature applicable to the subject to which his employment relates; that he is bound to take notice of the weight and the strength required to lift an *ordinary* object; that his mere misconception of the weight of an ordinary object, or of the strength required to lift it, does not render the master liable; that the fact that he acts under orders of a superior in lifting an object obviously too heavy for him does not render the master liable, and that he is bound to exercise ordinary care to protect himself. However, construing the allegations of the instant petition which are supported by the pleaded facts as true (which we must do in testing it as against a general demurrer), we think the petition sets out a cause of action. In other words, if the plaintiff should prove all that he has alleged in his petition, a nonsuit could not properly be granted. The plaintiff was a stranger to the work and the injury occurred the first day that he was assigned to it. The object to be lifted was not an ordinary object, such as a piece of iron, but the stage and the manner of lifting it were such that it was a question for the jury whether the plaintiff, as a man of average intelligence who was not familiar with the method of its operation, could ascertain the amount of strength required to hoist it. The plaintiff did not merely misconceive his strength, but there was an actual misrepresentation by the master both as to the weight of the stage and also as to its getting lighter the higher it went, which misrepresentations misled the plaintiff and were responsible, or at least partly so, for his misconception of the weight of the object and the strength necessary to operate the hoisting machine. By reason of the misrepresentations the plaintiff undertook the task, but when he got to the third floor of the building he found that he did not have sufficient strength for the work, and he then informed the foreman that he was under a great strain, "and asked that he be relieved therefrom," but the foreman "commanded petitioner to work on, and advised

him that the work would become lighter as he advanced higher.
. . The said work, instead of getting lighter, became heavier and
more straining the higher he went. . . Petitioner again requested
that he be relieved, and asked that the doors and windows along
the side of said building be opened that he might escape from said
elevated stage and get relief," but the foreman refused to relieve
petitioner, or to allow the windows or doors to be opened. Peti-
tioner was operating only one end of the stage, the other end being
operated by another servant, evidently under the same foreman.
For this reason the plaintiff could not control the operation of the
stage and let it down notwithstanding the foreman's orders. The
petitioner, after being misled into undertaking the task, informed
the foreman of his strained condition and twice asked that he be
relieved. Where a servant exercises ordinary care to protect him-
self, the fact that there might have been a *possibility* of his escap-
ing injury by some other method will not preclude a recovery.
Moreover, since the weight of the stage increased the higher up it
went, and the danger was not apparent to the plaintiff until he was
about three stories up on the side of the building, and since he was
placed in this dangerous position because of misrepresentations by
the master, "it will not be adjudged, on demurrer, that he assumed
the risk of continuing to work in the face of this increased hazard"
when "he did not have a fair opportunity of reasonably exercising
any choice in the matter." *Brown* v. *Rome Machine & Foundry
Co.*, 5 *Ga. App.* 142 (5 *a*) (62 S. E. 720). The first three head-
notes in *Beard* v. *Georgian Manufacturing Co.*, 8 *Ga. App.* 618 (70
S. E. 57), are as follows: "1. If a master, by misrepresenting to
his servant one of the conditions of a particular piece of labor, in-
duces the servant to enter upon an attempt to perform it with an
inadequacy of fellow servants, and injury results to the servant
from the task's proving to be beyond the physical capacity of those
engaged in attempting to perform it, the servant may ordinarily
recover from the master for the master's wrong in fraudulently ex-
posing the servant to an extraordinary hazard; provided that the
task was one as to which the master's knowledge was actually or con-
structively greater than that of the servant. 2. Every proprietor
of a business is conclusively presumed to have knowledge of the na-
ture of the constituents and general characteristics of the substances
and things used in his business—such a knowledge as that he can

give directions for the carrying on of his business with ordinary safety by servants performing it with ordinary care. This doctrine (usually referred to as the doctrine of assumption of skill) frequently makes the knowledge implied against the master superior. to that implied against the servant as to things used in connection with the master's business. 3. If a master directs a squad of servants to raise and carry an article, as to the weight of which he has knowledge, actual or constructive, and, in order to induce the servants to carry it, materially misrepresents the weight, and if, while the servants are in the act of carrying the load, it proves too much for the physical strength of those who are attempting to carry it, and it falls and injures one of the servants, the wrongful act of the master in misrepresenting the weight of the article is ordinarily to be regarded as the proximate cause of the injury." In the opinion in that case Powell, J., speaking for the court, said "In this case the petition alleges not mere constructive culpability against the master, but actual culpability—an intentional deceiving as to the risk about to be encountered. Knowing that the piece of iron weighed more than 2000 pounds—too heavy a load for ten men to undertake to lift without danger, he, through his foreman, represented to the defendant [plaintiff?], in order to induce him to undertake the work, that it weighed only 1100 pounds. . . In the case of *Cartter* v. *Cotter*, 88 *Ga.* 286 (14 S. E. 476), the master's direct misrepresentation to the servant as to the danger was an element recognized by the court in allowing the servant to recover. Indeed the books are full of cases in which the master has been held liable for injuries resulting to the servant from the master's either misrepresenting the danger or else failing to inform the servant as to it." In *Usry* v. *Augusta Southern Railroad Company*, 24 *Ga. App.* 722 (5) (102 S. E. 184), it was held: "Under the evidence in this case it can not be held, as a matter of law, that the dangers incident to the work in which the plaintiff was engaged when injured and which he had been ordered to do by the defendant's foreman, who knew that he was an inexperienced laborer, were so obvious as to preclude a recovery by him, whether the car under which the plaintiff was shoveling dirt when it fell and injured him was negligently propped up, and *whether the giving of the order by the foreman constituted negligence, were questions for the jury;* and the court erred in granting a nonsuit." (Italics ours.) In *Moore*

v. *Dublin Cotton Mills,* 127 *Ga.* 609, 616 (56 S. E. 839, 10 L. R. A. (N. S.) 772), the court said: "A servant is bound to obey the order of his master unless the command includes a violation of the law, or the act required is so obviously dangerous that no person of ordinary prudence would undertake to perform it. Where the master himself gives the order and the servant obeys it, and is injured as a consequence thereof, of course the master is liable. If the order is given by a representative of the master, who occupies towards him the position of vice-principal, the same result follows." See also *Southern Cotton Oil Co.* v. *Gladman,* 1 *Ga. App.* 259 (1-5), 262, 263 (58 S. E. 249). In *Hood* v. *Atlantic Steel Co.,* 29 *Ga. App.* 457 (115 S. E. 917), the plaintiff advised the foreman of the apparent danger relative to certain work, "but was reassured and told to proceed;" and Jenkins, P. J., speaking for the court in that case, said: "It was for the jury to say whether the alleged direct and specific command of the master, given with reference to the manner, means, and instrumentality by which the master's work was to be performed, and under his assurance of safety, was, under the circumstances, a negligent order. It can not, therefore, be held, as a matter of law, that the injuries thus occasioned resulted from an ordinary risk incident to the employment, such as would entitle the master to rely upon the servant's assumption of risk as a complete defence. . . It can not properly be held as a matter of law that the conduct of the servant necessarily evinced a lack of ordinary care, by subjecting himself to an obvious risk, in view of the special command and assurance given by the master. Nor can it necessarily be assumed, contrary to the allegations of the petition, that the plaintiff had skill, knowledge, and experience equal to the master, such as would make it incumbent upon him to contemplate the resultant" injury.

Under all the facts of the instant case, it was for the jury to determine whether the alleged misrepresentations and commands of the master were negligent, and whether, under the master's assurance of safety, the plaintiff in continuing the work was exercising ordinary care for his own protection. It follows that the court erred in dismissing the petition on general demurrer.

*Judgment reversed. MacIntyre and Guerry, JJ., concur.*